UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY ADAMS,

                Petitioner,

                                            Case No. 15-cv-11209

v.

                                            HON. MARK A. GOLDSMITH

SHAWN BREWER,

                Respondent.

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Terry Adams, currently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for carjacking, Mich. Comp. Laws § 750.529a; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12.  For the reasons discussed fully below, the Court denies the petition for writ of habeas corpus.

## I.  BACKGROUND

Petitioner's conviction arises out of an incident in which he carjacked a Cadillac from a car salesman while taking the car for a test drive.  Petitioner was convicted following a jury trial in the Oakland County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises from an incident in which he took a 2002 Cadillac for a test drive, accompanied by the victim, and then eventually stole the vehicle.  At trial, defendant did not contest that he stole the car.

1

*          *          *

> At trial, the victim testified that he became "fearful" during the
> offense because he eventually realized that defendant intended to
> steal the vehicle and he was afraid that he would be "beaten up" or
> taken away in defendant's effort to steal the car.  This evidence,
> viewed in the light most favorable to the prosecution, is sufficient
> to enable a reasonable jury to infer that the victim was placed in
> fear during the commission of the larceny of the vehicle.
> Furthermore, a jury could reasonably infer that the victim was
> placed in fear when he was nearly struck by the car mirror as
> defendant sped away after expelling the victim from the vehicle.
> Defendant thus inspired fear in the victim while in the course of
> committing a larceny of a motor vehicle.  MCL 750.529a(2).
> Defendant's reliance on an excerpt of the victim's preliminary
> examination testimony, to argue that the victim was not in fear, is
> misplaced, because that testimony relates to an earlier portion of
> the test drive, before the victim realized that defendant intended to
> steal the vehicle.  Viewed in a light most favorable to the
> prosecution, the evidence was sufficient to enable the jury to find
> beyond a reasonable doubt that the victim was placed in fear
> during the commission of the larceny of the vehicle.

People v. Adams, No. 304468, 2012 WL 2335328, at * 1 (Mich. Ct. App. June 19, 2012) (per

curiam).

Petitioner's conviction was affirmed on appeal.  See id., leave denied 822 N.W. 2d 556

(Mich. 2012).  Petitioner then filed a post-conviction motion for relief from judgment, which was

denied.  People v. Adams, No. 11-235484-FC (Oakland Cnty. Cir. Ct. Mar. 26, 2013) (Dkt. 13-

12).  And the Michigan appellate courts denied Petitioner leave to appeal.  People v. Adams, No.

318111 (Mich. Ct. App. Feb. 21, 2014) (Dkt. 13-13), leave denied 853 N.W. 2d 348 (Mich.

2014) (Dkt. 14).

Petitioner has filed a petition for writ of habeas corpus, seeking relief on the following

grounds:

     i.    insufficiency of the evidence;

2

    ii.    ineffective assistance of counsel for failure to file a motion to suppress due to an illegal photographic lineup, and that the victim's testimony should have been inadmissible at trial;

    iii.    the State lacked jurisdiction because the court failed to provide counsel at the initial arraignment;

    iv.    "5th Amendment Violation. (Double Jeopardy-Successive Prosecution);" and,

    v.    "6th Amendment Violation. (Ineffective assistance of Appellate Counsel.) (Failure to discover trial counsel's ineffective issues on appeal. [A]lso, Appellate Counsel failure to raise meritorious issues and to file appellant's supplemental non-harmless issues.)."

Pet. at 5, 7-8 (cm/ecf pages) (Dkt. 1); Am. Pet. at 1 (cm/ecf pages) (Dkt. 14).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.  Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts,

it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

### A. Claim One: Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence to support his conviction for carjacking. Petitioner does not deny that he stole the vehicle, but he argues that there was no evidence presented that he placed the victim in fear, which is a requisite element of the offense of carjacking.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 318-319 (emphasis in the original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000).

More importantly, a federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. In fact, the Jackson standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" Davis v. Lafler, 658 F.3d 525, 534 (6th Cir. 2011) (quoting United States v. Oros, 578 F.3d 703, 710 (7th Cir. 2009)). Indeed, for a federal habeas court reviewing a state-court conviction, "the only question under Jackson is

whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

The elements of carjacking are: (i) the defendant took a motor vehicle from another person; (ii) the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle; and (iii) the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. See People v. Davenport, 583 N.W. 2d 919, 921 (Mich. Ct. App. 1998).

The victim in this case, John Drummy, testified that he directed Petitioner to drive "south on Rochester Road to M-59," then proceed east on M-59. Drummy told Petitioner to exit M-59 at Dequindre Road, where he normally had test drivers exit. Drummy asked Petitioner if he wanted to go back the same way, or go over to South Boulevard and head back to Rochester Road. Petitioner took a right on South Boulevard, heading west. The two men reached Rochester Road and turned back toward the dealership. See 5/9/2011 Trial Tr. at 165-167, 197-198 (Dkt. 13-5).

Drummy testified that Petitioner received several phone calls during the test drive. When Petitioner appeared to be having trouble hearing the person on the phone, Drummy turned down the radio, but Petitioner turned the radio back up "2 or 3 times," which Drummy found "odd" and "kind of . . . weird." Drummy was not able to hear any of the conversations. Id. at 168-169, 193.

Petitioner told Drummy that his aunt lived at Sixteen Mile Road and I-75, about four miles south toward the City of Troy, and asked if they could go pick her up and bring her back. Drummy hoped that Petitioner's request was legitimate, as Drummy had spoken to the woman previously. Id. at 167-169, 191-192. Drummy was suspicious, though, "because it's not normal.

Most people don't want to drive . . . 5 to 7 miles out of their way to get to a certain point to pick up . . . their aunt." Id. at 169-170.  Although Petitioner had made no threats or used any force, Drummy felt uneasy "because of the result of the phone calls. . . .  I don't normally drive down Rochester Road towards [I-75] to go pick anybody up normally. It's a simple route that we normally take and either through the town or down [M-59] and back, and then we go back to the dealership."  CITE.  Drummy indicated that he had never been asked to go pick up someone who was "8 miles down the road." Id. at 193-194.

Petitioner made a U-turn maneuver and headed south on Rochester Road. Id. at 168. Near the intersection of Wattles and Rochester Roads, Petitioner received another phone call, and he then indicated that his aunt was now at Thirteen Mile Road and I-75.  Drummy told Petitioner to have his aunt meet them at the dealership. Id. at 170.  Although Petitioner made no threats, Drummy still had an "uneasy feeling." Id. at 171, 194.  Drummy hoped that "this car [was] not going to be permanently borrowed, or stolen, if you want to call it." Id. at 171.  He "really [did not] want to get on [I-75] . . . going south." Id.  Drummy "knew that the car was gone . . . [s]tolen" if Petitioner got on the highway. Id. at 171, 194.

When Petitioner received the phone call at Wattles Road, Drummy "knew the car was going to be stolen" and his "only concern at that point was getting out of the vehicle." Id. at 174-175, 203.  Mr. Drummy testified that he was in fear at Wattles Road. Id. at 196-197.  When the car reached I-75, Petitioner entered the freeway and drove south; Drummy did not want to go south on the highway.  Petitioner received another phone call and the destination changed to Eleven Mile Road.  After another phone call, the location again changed to I-75 and Seven Mile Road.  Petitioner received "8 or 10 phone calls" total.  See id. at 176-178.  Drummy was fearful

because "we don't normally drive [I-75] south going many, many miles away from the dealership, after being repeatedly [told], hey, let's go back." Id. at 200.

When the car reached Seven Mile Road, Defendant exited the freeway. The men were now in the City of Detroit. Petitioner pulled into a gas station and ordered Drummy to get out of the car. Petitioner then "took off" at a "[h]igh rate" of speed, "wheels turning, burning." Id. at 182 Drummy was "about 4 inches" from the car when Defendant took off, and "the mirror almost took my leg out." Id. Drummy had to "jump out of the way." Id. Petitioner did not have permission to take the car. Id. at 188.

The evidence, when viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that Petitioner placed the victim in fear, so as to sustain his conviction for carjacking. The repeated phone calls received by Petitioner, which he did not want the victim to hear, the continued changes of destination, Petitioner's decision to get onto I-75 and drive a number of miles down into the City of Detroit (to an area unfamiliar to the victim) before ordering him out of the car, and the fact that Petitioner almost hit the victim with the mirror of the car while driving away at a high rate of speed, all support a finding that Petitioner placed the victim in fear while taking the car, so as to support his conviction for carjacking. Therefore, the Court concludes that Petitioner is not entitled to habeas relief on his first claim.

### B. Claims Two Through Five: The Procedurally Defaulted Claims

Respondent contends that Petitioner's remaining claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure

9

to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). If the petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented, even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-480 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998).

Respondent contends that Petitioner's second claim, alleging that trial counsel was ineffective for failing to suppress the result of an illegal photographic lineup, and his third claim, alleging that the court lacked jurisdiction because Petitioner was not provided an attorney at his arraignment on the warrant, are procedurally defaulted, because Petitioner did not properly exhaust these claims with the Michigan courts and no longer has a remedy to do so.

Petitioner did not raise his second and third claims in his appeal of right before the Michigan Court of Appeals. Petitioner raised these claims for the first time before the Michigan Supreme Court in the motion to remand that he filed with his application for leave to appeal (Dkt. 13-9).

Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. See Castille v. Peoples, 489 U.S. 346, 351 (1989). Because Petitioner failed to adequately present

his second and third claims on his appeal of right with the Michigan Court of Appeals, his subsequent presentation of these claims to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes. See Skinner v. McLemore, 425 F. App'x 491, 494 (6th Cir. 2011); Farley v. Lafler, 193 F. App'x 543, 549 (6th Cir. 2006).

Compounding this problem is that Petitioner did not attempt to raise these claims again in his post-conviction motion for relief from judgment that he filed with the trial court (Dkt. 13-10), or in his post-conviction appeal that he filed with the Michigan Court of Appeals (Dkt. 13-13). And although Petitioner attempted to raise his second claim in his post-conviction appeal with the Michigan Supreme Court (Dkt. 13-14), his subsequent presentation of his second claim to the Michigan Supreme Court on post-conviction review did not satisfy the exhaustion requirement for habeas purposes. See Warlick v. Romanowski, 367 F. App'x 634, 643 (6th Cir. 2010).

In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his or her post-conviction motion before the state trial court and in his or her post-conviction appeal to the state's appellate courts. See Smith v. Gaetz, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner's failure to present his second claim in his post-conviction motion for relief from judgment or in his post-conviction appeal to the Michigan Court of Appeals means that this claim was never exhausted.

Moreover, the mere fact that Petitioner raised other ineffective assistance of trial and appellate counsel claims in his post-conviction motion for relief from judgment would be insufficient to exhaust the assistance of counsel claims that he presents in his second and third claims. A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim to the state courts. McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000). The doctrine of exhaustion requires that the same claim under the same theory

be presented to the state courts before it can be raised in a federal habeas petition.  Wong v.
Money, 142 F.3d 313, 322 (6th Cir. 1998).  "Even the same claim, if raised on different grounds,
is not exhausted for the purpose of federal habeas review."  Rayner v. Mills, 685 F.3d 631, 643
(6th Cir. 2012).

Petitioner's claim that counsel was ineffective for failing to suppress the photographic
lineup and his claim that he was denied counsel at the arraignment on the warrant are different
than the ineffective assistance of trial and appellate counsel claims raised in Petitioner's motion
for relief from judgment and his post-conviction appeals; Petitioner's second and third claims
were not fairly presented to the Michigan courts for exhaustion purposes.  See Caver v. Straub,
349 F.3d 340, 346-347 (6th Cir. 2003); see also Brandon v. Stone, 226 F. App'x 458, 459 (6th
Cir. 2007).

Respondent contends that a portion of Petitioner's fourth claim, alleging a double
jeopardy violation, is procedurally defaulted, because Petitioner never raised a double jeopardy
claim on direct or post-conviction review and no longer has a remedy with which to exhaust this
claim.  A review of Petitioner's pleadings shows that Petitioner never raised a double jeopardy
claim on direct or post-conviction review.  Accordingly, this portion of Petitioner's fourth claim
is procedurally defaulted for the same reasons as Petitioner's second and third claims.

Petitioner no longer has any available state-court remedies with which to exhaust his
second or third claims, or the double jeopardy portion of his fourth claim.  Under Michigan
Court Rule 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-
conviction motion for relief from judgment.  See Gadomski v. Renico, 258 F. App'x 781, 783
(6th Cir. 2007); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Having filed one

12

post-conviction motion for relief, Petitioner has no remaining state-court remedies with which to exhaust his claims.

If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. Hannah v. Conley, 49 F.3d 1193, 1195-1196 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. Id. at 1196 n. 3.

Petitioner has failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse Petitioner's failure to raise his claims on his direct appeal, it does not excuse Petitioner's own failure to exhaust these claims in his post-conviction motion for relief from judgment. See Gadomski, 258 F. Appx. at 784.

Furthermore, to the extent that Petitioner meant to argue in his fourth habeas claim that the trial court abused its discretion and deprived Petitioner of a fair trial when it allowed a prosecution witness to testify about facts in a case that was dismissed by the prosecutor in violation of Michigan Rule of Evidence 404(b), Respondent argues that the claim is procedurally defaulted, because Petitioner raised it for the first time on post-conviction review and failed to establish cause and prejudice, as required by Michigan Court Rule 6.508(D)(3) for failing to raise these claims on his direct appeal. See Resp't Answer at 11-16 (Dkt. 17).[1] Assuming

---

[1] Petitioner's fourth claim merely states, "5th Amendment Violation. (Double Jeopardy-Succesive [sic] Prosecution)." Am. Pet. at 1 (cm/ecf page). As Respondent points out, included with Petitioner's original habeas corpus petition was an order entered by the Wayne County Circuit Court dismissing, without prejudice, charges of second-degree fleeing and eluding, unlawful driving away of an automobile, and resisting and obstructing a police officer. See Pet. at 36 (cm/ecf page). Petitioner did include a 404(b) claim in his motion for relief from judgment.

Petitioner's meant to include a 404(b) claim on habeas review, the Court agrees with Respondent that such a claim is procedurally defaulted.

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that the defendant has failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D) (Dkts. 13-13, 13-14). These orders, however, did not refer to subsection (D)(3), nor did they mention Petitioner's failure to raise his claim on his direct appeal as their rationale for rejecting his post-conviction claim.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained.  See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. Id.

The Oakland County Circuit Court judge rejected Petitioner's post-conviction claims, because Petitioner failed to show cause and prejudice, as required by Michigan Court Rule 6.508(D)(3), for failing to raise the issues on Petitioner's direct appeal.  See People v. Adams, No. 11-235484, Op. & Order at 3-5 (Dkt. 13-12).  Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in Michigan Court Rule 6.508(D)(3), Petitioner's 404(b) claim is procedurally defaulted.  See Ivory v. Jackson, 509 F.3d 284, 292-293 (6th Cir. 2007); see also Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of Petitioner's claim in addition to invoking the provisions of Michigan Court Rule 6.508(D)(3) to reject Petitioner's claim does not alter this analysis.  See Alvarez v. Straub, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A

---

See Pet'r Mot. at 14-18 (Dkt. 13-10).  However, Petitioner's reply briefs do not provide any clarity on this issue (Dkts. 15, 18).

federal court need not reach the merits of a habeas petition where the last state-court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits.  McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991). Therefore, to the extent he meant to raise it in his amended petition, Petitioner's 404(b) claim is procedurally defaulted.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default for failing to raise this claim on his appeal of right.[2]  Petitioner, however, has not shown that appellate counsel was ineffective.

It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.

The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring a Strickland[ v. Washington, 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th

---

[2] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim.  See Guilmette, 624 F.3d at 291; Hicks v. Straub, 377 F.3d 538, 558 n. 17 (6th Cir. 2004). However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. See Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a 29-page appellate brief raising two claims, including the sufficiency of evidence claim raised by Petitioner (Dkt. 13-8). Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Oakland County Circuit Court judge in rejecting Petitioner's post-conviction claims and by the Assistant Michigan Attorney General in the answer to the petition for writ of habeas corpus, the claims that were raised by Petitioner in his post-conviction motion were not "dead-bang winners." Because Petitioner's post-conviction claims were not "dead-bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise his claims on direct review. See McMeans, 228 F.3d at 682-683.

Petitioner further appears to argue that any default for either not properly exhausting his second or third claims or his failure to raise his fourth claim on his direct appeal should be

excused because he was not permitted to file a Standard 4 supplemental pro per brief on direct appeal in addition to the brief filed by appellate counsel.[3]

A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. Martinez v. Ct. of Appeal of Cal., 528 U.S. 152, 163 (2000). This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself. However, the Sixth Amendment does not include any right to appeal. Id. at 160. There is no constitutional entitlement to submit a pro se appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. See McMeans, 228 F.3d at 684. By accepting the assistance of counsel, the criminal appellant waives his right to present pro se briefs on direct appeal. See Henderson v. Collins, 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999), aff'd in part, vacated in part on other grounds, 262 F. 3d 615 (6th Cir. 2001) (defendant who was represented by counsel and also sought to submit pro se brief upon appeal did not have right to such hybrid representation). Thus, any failure by appellate counsel to submit a pro se brief on behalf of Petitioner does not present a constitutional question that would entitle him to relief. Nor would it excuse Petitioner's default for failing to raise these claims on his appeal of right or excuse him from properly exhausting the claims on post-conviction review. McMeans, 228 F.3d at 684.

In the present case, Petitioner has failed to allege any reasons to excuse his various procedural defaults. Because Petitioner has not alleged or demonstrated any cause for his procedural defaults, it is unnecessary to reach the prejudice issue regarding his defaulted claims. Smith, 477 U.S. at 533. Additionally, Petitioner has not presented any new reliable evidence to

---

[3] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a pro se brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." Ware v. Harry, 636 F. Supp. 2d 574, 594 n. 6 (E.D. Mich. 2008).

support any assertion of innocence that would allow this Court to consider Petitioner's second through fourth claims as grounds for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual-innocence doctrine to the procedural-default rule.  See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's procedurally defaulted claims on the merits.  Id.

Finally, assuming that Petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural-default rule, because his claims would not entitle him to relief.   The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice.  See Matthews v. Ishee, 486 F.3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Assistant Michigan Attorney General in his answers to the original and amended petitions for writ of habeas corpus, Petitioner failed to show that his procedurally defaulted claims have any merit.  Therefore, Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### C.   Claim Five:  The Ineffective Assistance of Appellate Counsel Claim

As part of his fifth claim, Petitioner contends that appellate counsel was ineffective for failing to raise on his appeal of right several claims that Petitioner raised in his post-conviction motion for relief from judgment, but failed to present as independent grounds for relief with this Court.   The trial judge reviewed these claims as part of Petitioner's motion for relief from judgment and rejected them as meritless.   Petitioner also raised these claims in his post-conviction appeals to the Michigan Court of Appeals and Michigan Supreme Court, who denied him relief.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right.  Evitts v. Lucey, 469 U.S. 387, 396-397 (1985).  However, court-appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant.  Barnes, 463 U.S. at 751.

Petitioner first claimed that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for telling the jurors that they were "obligated" to find Petitioner guilty if they believed he put the victim in fear.  The judge rejected this claim, noting that Petitioner's claim was based on a "selective emphasis on one sentence" without noting that counsel made the statement in the context of arguing that the victim had no credible basis for being in fear.  The judge also noted that counsel asked the jurors to find petitioner not guilty.  Adams, No. 11-235484, Op. & Order at 7-8.

Petitioner next claimed that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for conceding Petitioner's guilt by acknowledging that a larceny took place in this case.  The trial judge rejected this claim, finding that counsel made these statements in the context of arguing that Petitioner was not guilty of carjacking, because there was no evidence that the victim was in fear and that Petitioner was either not guilty or guilty at most of the lesser offense of larceny from a person.  Id. at 8-9.

An attorney may not admit his client's guilt contrary to the client's earlier entered not-guilty plea, unless the defendant unequivocally agrees to and understands the consequences of his admission.  Wesley v. Sowders, 647 F.2d 642, 649 (6th Cir. 1981).  In Wesley v. Sowders, the Sixth Circuit found defense counsel to be ineffective because both defense attorneys repeatedly stated in closing argument that the defendant was "guilty," "guilty as charged," and "guilty beyond a reasonable doubt."  Id. at 649-650.  The Sixth Circuit found that counsel's

19

arguments represented the "precise admission" that defendant had rejected in his earlier not guilty plea.  Id. at 650.  In finding the petitioner's counsel to be ineffective, the Sixth Circuit noted that counsel's "complete concession" of his client's guilt was a nullification of the adversarial quality of the fundamental issue of guilt or innocence.  Id.

This case is distinguishable from the one in Wesley, because Petitioner's trial counsel did not concede that Petitioner was guilty of the charged offense of carjacking, but was guilty, at most, of larceny from a person.

A defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel.  See, e.g., Goodwin v. Johnson, 632 F.3d 301, 310 (6th Cir. 2011); Valenzuela v. United States, 217 F. App'x 486, 488-490 (6th Cir. 2007); Johnson v. Warren, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004).  In this case, to the extent that trial counsel conceded that Petitioner was guilty of larceny from a person, it was part of a strategy to obtain an acquittal on the more serious carjacking charge.

Petitioner further claims that appellate counsel should have raised a claim that trial counsel was ineffective for failing to object to the jury instruction on carjacking because it was defective, in that it did not instruct the jurors that Petitioner had to take the car without the victim's consent.  The judge rejected this claim, on the ground that he had given the standard jury instruction for the offense of carjacking.  See Adams, No. 11-235484, Op. & Order at 11; Mich. Crim. J.I. 18.4a (formerly CJI2d 18.4a)  The judge further noted that the jurors were specifically instructed on the lesser included offense of larceny from a person and informed that

20

the taking of the car had to be without the victim's consent.  <u>Adams</u>, No. 11-235484, Op. & Order at 10-12.

Trial counsel is not ineffective for failing to object to jury instructions that are correct. <u>See</u> <u>Campbell v. Coyle</u>, 260 F.3d 531, 557 (6th Cir. 2001).  Because the instructions as given on the elements for carjacking and the issue of the victim's consent were adequate, counsel's failure to object was not objectively unreasonable, and Petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on his claim.  <u>See</u> <u>Jacobs v. Sherman</u>, 301 F. App'x 463, 466-467 (6th Cir. 2008).

Petitioner further claims that appellate counsel was ineffective for failing to argue that Petitioner could only be charged with obtaining property by false pretenses.  The judge rejected this claim, ruling that consent to take a car on a test drive does not equate with consent to allow Petitioner to take the vehicle permanently.  <u>Adams</u>, No. 11-235484, Op. & Order at 12-14.

The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).  State courts are the "ultimate expositors of state law."  <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975).  What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available.  <u>See</u> <u>Sanford v. Yukins</u>, 288 F.3d 855, 862 (6th Cir. 2002).  Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as <u>Jackson</u> claims.  <u>Id</u>.  This Court must, therefore, defer to the state court's construction of the elements of state crimes.  <u>See</u> <u>Coe v. Bell</u>, 161 F.3d 320, 347 (6th Cir. 1998).

The trial court determined that Petitioner was not entitled under Michigan law to be charged with the offense of obtaining property by false pretenses.  Because Petitioner was not improperly charged with carjacking, appellate counsel was not ineffective for failing to raise this claim on Petitioner's direct appeal.

To the extent that Petitioner claims that appellate counsel was ineffective for failing to raise a 404(b) claim with respect to the testimony regarding Petitioner's arrest in Wayne County for fleeing and eluding a police officer, such a claim is defeated by the fact that the judge indicated that this offense was admissible to prove Petitioner's intent in this case.  Adams, No. 11-235484, Op. & Order at 14-16.   Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005) (quoting Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the trial court judge determined that this evidence was admissible under Michigan law, this Court must defer to that determination in resolving and rejecting Petitioner's ineffective assistance of appellate counsel claim.  See, e.g., Brooks v. Anderson, 292 F. App'x 431, 437-438 (6th Cir. 2008).

Petitioner next claims that appellate counsel was ineffective for failing to argue that venue was improper in Oakland County because the crime took place in Wayne County.  The judge rejected this claim, finding that Michigan Complied Law § 762.8 permits a felony to be prosecuted in any county in which one of the acts done in perpetration of the felony was committed.  Adams, No. 11-235484, Op. & Order at 16-19.  This is a determination of state law that is binding on this Court.

Petitioner lastly claims that appellate counsel should have raised a claim that the prosecutor committed misconduct by forcing the victim to use the word "fear" during direct

examination, and then using it during closing argument.  The judge concluded that Petitioner's claim was without merit, because fear was an element of the crime of carjacking and any statement to the effect that Drummy was placed in fear was nothing more than evidence supporting one of the crimes charged.  Id. at 19-20.  A prosecutor does not commit misconduct by asking witnesses relevant questions.  Slagle v. Bagley, 457 F.3d 501, 518 (6th Cir. 2006).  Because the questions and comments were relevant to establishing the elements of the charged offense, the questions and comments did not deprive Petitioner of a fair trial.

"[A]ppellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit." Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of Petitioner's direct appeal.

### D.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. Id.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied. Accordingly, a certificate of appealability is not warranted in this case.

### E.  Leave to Proceed In Forma Pauperis

 Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R.

App. P. 24(a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  <u>Foster</u>, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed <u>in forma pauperis</u> on appeal.  <u>Id.</u> at 764-765.

### IV.  CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.  However, the Court grants Petitioner leave to appeal  <u>in forma pauperis</u>.

SO ORDERED.

Dated:  March 29, 2016                              s/Mark A. Goldsmith
       Detroit, Michigan                           MARK A. GOLDSMITH
                                      United States District Judge

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2016.

                                        s/Karri Sandusky
                                        Case Manager